**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Rulon Robinson,<br><br>    Appellant,<br><br>v.<br><br>FTAS Legacy XI LLC,<br><br>    Appellee. | No. CV-24-02483-PHX-DJH<br><br>**ORDER** |

Appellant David R. Robinson ("Robinson") appeals from a decision of the United States Bankruptcy Court (the "Bankruptcy Court") (Doc. 5-1 at 104–105), granting FTAS Legacy XI LLC's ("FTAS") motion to dismiss. (Doc. 5). Robinson argues that the Bankruptcy Court erred when it did not conduct an evidentiary hearing as to: (1) whether the notice of default was properly noticed to Robinson, (2) whether the notice of hearing was properly noticed, and (3) whether dismissal was appropriate under 11 U.S.C. § 1112(b)(1). (*Id*. at 9–19). The matter is ripe for review. (Docs. 6 & 9). The Court affirms the Bankruptcy Court's decision for the reasons that follow.

**I.    Background**

Robinson filed an individual Chapter 11 bankruptcy in May 2016. (Doc. 5-1 at 31). He filed his Plan of Reorganization (the "Plan") in December 2016. (*Id.* at 28). In September 2017, Robinson and FTAS stipulated to bifurcate FTAS's claim under the Plan into a $100,000 secured claim and a $468,106.36 unsecured claim (the "Stipulation"). (*Id.* at 30–32). Robinson was to pay the secured claim in sixty monthly installments of

$635.00, followed by a balloon payment[1] on the sixty-first month. (*Id.* at 31).

In the event of a default, the Plan requires a creditor to provide notice via certified mail giving Robinson a 30-day period to cure the default. (*Id.* at 23–24). The Stipulation, however, only requires a 30-day notice and makes no mention of certified mail. (*Id.* at 31). According to the Plan, the terms of the Stipulation control, but only "to the degree an issue is addressed." (*Id.* at 17). The Bankruptcy Court entered an Order confirming the Plan in December 2018. (*Id.* at 11–12).

From July 2023 through December 2023, FTAS claims that Robinson failed to make the required monthly payments to FTAS, as well as the final balloon payment in January 2024. (Doc. 6 at 5). FTAS then sent Robinson notice of default (the "Notice of Default") (Doc. 5-1 at 55–56), although Robinson contests whether the notice was sent via certified mail. (Doc. 5 at 12–13). FTAS claims that Robinson did not respond, so all outstanding amounts became immediately due and payable to FTAS in February 2024. (Doc. 6 at 6). In April, the United States Trustee (the "U.S. Trustee") filed a Notice of Non-Compliance, claiming that Robinson had not paid required quarterly fees or submitted required quarterly reports for five years after the confirmation of the Plan. (*Id.*)

FTAS moved to dismiss the bankruptcy case in July, citing Robinson's material default and failure to cure within the 30-day period. (Doc. 5-1 at 44–57). Robinson filed the following four-sentence response/objection to the motion to dismiss in August:

> 1. Debtor admits there is a failure to pay the balance owed under the Plan to Creditor.
>
> 2. Dismissing this case is not in the best interest of the Creditors and is a way for a crammed-down creditor to seek full payment of its general unsecured debt.
>
> 3. Debtor has obtained almost all the amounts due to the Creditor under

---

[1] A balloon payment is a "large, one-time payment at the end of the loan term." *What is a balloon payment? When is one allowed?*, CONSUMER FINANCIAL PROTECTION BUREAU, https://www.consumerfinance.gov/ask-cfpb/what-is-a-balloon-payment-when-is-one-allowed-en-104/ (last updated Jan. 2, 2025); *see also* Carol M. Kopp, *Balloon Payment: What It Is, How It Works, Examples, Pros and Cons*, INVESTOPEDIA, https://www.investopedia.com/terms/b/balloon-payment.asp (last updated June 29, 2023) ("A balloon payment is the final amount due on a loan that is structured as a series of small monthly payments followed by a single much larger sum at the end of the loan period.").

- 2 -

the Plan.

4. Debtor believes he can have the full amount paid by the time of the hearing set on August 22, 2024.

(*Id.* at 68–69).  The Bankruptcy Court held a hearing on the motion on August 22, 2024 (the "Hearing"), which Robinson attended.  (*Id.* at 108–114).  FTAS had previously sent notice of hearing to Robinson (the "Notice of Hearing").  (Doc. 5-1 at 59–60).

At the Hearing, the Bankruptcy Court inquired whether Robinson was in default through the following exchanges:

> THE COURT: Does the Debtor challenge the accuracy of the statements made in support of the motion?
>
> [Robinson's Counsel]: The factual basis, meaning the payments that were not made, there's no dispute there. . . .
>
> . . . .
>
> THE COURT: . . . . Do you dispute the U.S. Trustee's allegation that the Debtor has not paid any quarterly fees since confirmation?
>
> [Robinson's Counsel]: No.
>
> THE COURT: Okay.  Why not?
>
> [Robinson's Counsel]: I can't—I mean, I could try to give you an answer. I can tell you that it's not going to be an adequate response as to what's going on.
>
> THE COURT: Okay.  And do you do you [sic] agree that with the FTAS allegations [sic] with respect to failure to make payments?
>
> [Robinson's Counsel]: Yes.
>
> THE COURT: Okay.  Well, help me out.  Why haven't they shown cause for dismissal?
>
> [Robinson's Counsel]: . . . [T]he only real defense the Debtor would have is that it actually is better for the creditors for him to stay in bankruptcy. . . .

(*Id.* at 108–111).

Robinson's counsel mentioned that there was a question about whether the Robinson was in default, because of a provision in the Plan requiring certified mail for the Notice of Default:

- 3 -

> [Robinson's Counsel]: The only question would really be whether they're in default.
>
> The [P]lan in paragraph 8 has a provision regarding certified mails required for notice. . . . [T]hat would be the main defense the Debtor would have as to the motion as to whether he's in default.

(*Id.* at 110).

Finally, Robinson's counsel asked the Bankruptcy Court if it would deny dismissal if Robinson paid the secured claim to FTAS. (*Id.* at 112–13). He explained that Robinson was ready to pay the amount of the secured claim, but FTAS had rejected the offer because Robinson could not pay the full amount owed, i.e., both the secured and unsecured claims:

> [Robinson's Counsel]: . . . [Robinson] wanted me to ask if he could pay the amount due under the [P]lan today, if that would change your ruling.
>
> THE COURT: Well, why didn't he do it yesterday?
>
> [Robinson's Counsel]: He actually tried to do it yesterday and they said that he has to pay, not the amount due under the [P]lan, but the full amount . . . .
>
> THE COURT: Well, that tells me that if I said yes to that, then you would be tendering a payment that the other side does not agree does what he said, which is the full amount owed. . . .
>
> . . . . Tell me the number, the Arabic number that you would propose to pay.
>
> [Robinson's Counsel]: Well under the [P]lan, with the interest as it's calculated, it would be approximately 110,000 and some change. And so that was the amount that he was trying to pay.
>
> Now there is—there is—because this is a cramdown, there is a balance that's owed to an unsecured part, which if this gets dismissed, of course, gets reinstated and then becomes a lien against the property.

(*Id.* at 112–14).

After determining that cause for dismissal existed, the Bankruptcy Court entered an Order granting the motion. (*Id.* at 104–105). Believing the Bankruptcy Court erred, Robinson now appeals its Order to this Court.

## II. Legal Standard

A district court has jurisdiction to hear an appeal of a decision of a bankruptcy court.

- 4 -

28 U.S.C. § 158(a). When evaluating a bankruptcy court's final order, a district court reviews the bankruptcy court's finding of fact for clear error and its conclusions of law *de novo*. *In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010) (citing *In re Strand*, 375 F.3d 854, 857 (9th Cir. 2004)). "Clear error exists if the finding is 'illogical, implausible, and without support in inferences that may be drawn from the record.' " *Doe v. Snyder*, 28 F.4th 103, 106 (9th Cir. 2022) (quoting *Edmo v. Corizon, Inc.*, 935 F.3d 757, 784–85 (9th Cir. 2019)). In other words, the court "must accept the bankruptcy court's findings of fact, unless 'the court is left with the definite and firm conviction that a mistake has been committed.'" *In re JTS Corp.*, 617 F.3d at 1109 (quoting *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009)). "Mixed questions of law and fact are reviewed *de novo*." *Id.* (quoting *In re Chang*, 163 F.3d 1138, 1140 (9th Cir. 1998)).

**III.   Discussion**

Robinson argues that the Bankruptcy Court committed clear error in three ways: (1) finding that notice of default was proper, (2) finding that notice of hearing was proper, and (3) finding dismissal appropriate under 11 U.S.C. § 1112(b)(1). (Doc. 5 at 9–19). The Court will address the third argument first.

**A.   Appropriateness of Dismissal Under 11 U.S.C. § 1112(b)(1)**

Robinson contends that the Bankruptcy Court committed clear error (1) when it found that there was cause to dismiss, (2) when it found that dismissal was in the best interests of the creditors and the estate, and (3) when it failed to inquire whether conversion or the appointment of a trustee or examiner was in the best interests rather than dismissal. (Doc. 5 at 11–12, 17–18). The Court disagrees.

The party seeking dismissal under Section 1112(b)(1) bears "the initial burden of persuasion to establish that cause exists for granting such relief." *In re Baroni*, 36 F.4th 958, 966 (9th Cir. 2022). The definition of cause includes "a material default by the debtor with respect to a confirmed plan." 11 U.S.C. § 1112(b)(4)(N). In the Ninth Circuit, "failing to make required plan payments can be a material default of the plan." *In re Baroni*, 36 F.4th at 967 (citations omitted). However, not every missed payment is a material default.

- 5 -

*Id.* Some factors relevant to show that missed payments are a material default include "the number of missed payments, the number of aggrieved creditors, and how long the default occurred." *Id.*

"If cause is established, the decision whether to convert or dismiss the case falls within the sound discretion of the court." *In re Sullivan*, 522 B.R. 604, 612 (B.A.P. 9th Cir. 2014). If a bankruptcy court finds cause, it must then investigate any unusual circumstances that may "establish that dismissal or conversion is not in the best interests of creditors and the estate" and decide which of dismissal, conversion, or the appointment of a trustee or examiner is in the best interests. *Id.* (citing § 1112(b)(1), (b)(2); *In re Owens*, 552 F.3d 958, 961 (9th Cir. 2009)). There are thus three inquiries for the court to decide: "(1) whether cause exists for granting relief under Section 1112(b)(1); (2) whether granting relief is in the creditors' and the estate's best interests; and (3) if so, which form of relief best serves the creditors' and the estate's interests." *In re Baroni*, 36 F.4th at 965.

**1.    Cause**

Robinson argues that the Bankruptcy Court erred when it found cause existed because "more information was required to find a default under the Plan." (Doc. 5 at 13). FTAS argues that cause exists because of Robinson's material defaults under the Plan by failing to make multiple required payments to FTAS. (Doc. 6 at 8). The record supports FTAS.

The Bankruptcy Court confirmed the Plan in December 2018. (Doc. 5-1 at 11–12). From July 2023 through December 2023, Robinson failed to make the required monthly payments to FTAS, including the final ballon payment due in January 2024. (*Id.* at 109–111). FTAS alleges that it sent Robinson written notice of default via certified mail, providing him with 30 days to pay the outstanding amount before all outstanding amounts became immediately due, but no payment was made in February. (Doc. 6 at 5–6). In April 2024, the U.S. Trustee filed a Notice of Non-Compliance, alleging that Robinson had not paid quarterly fees for five years after the confirmation and had filed no reports. (*Id.* at 3).

Robinson did not dispute the allegations of missed payments before the Bankruptcy

Court. (Doc. 5-1 at 109–111). At the Hearing, Robinson's counsel stated that "[t]he factual basis, meaning the payments that were not made, there's no dispute there." (*Id.* at 110). When the Bankruptcy Court asked him whether he agreed with FTAS's allegations about failure to make payments, Robinson's counsel said that he did. (*Id.* at 111). He added, "there's definitely been terms of the plan that were not abided by. There's definitely been issues in regards to [sic] reporting requirements as well as paying the United States Trustee, which were not complied with." (*Id.*) In essence, Robinson conceded his breach.

The Bankruptcy Court did not commit clear error in finding cause to dismiss here. *See In re JTS Corp.*, 617 F.3d at 1109 (a court must accept a bankruptcy court's finding of fact unless it is firmly convinced there is a mistake). Robinson missed all his monthly payments to FTAS for six months, as well as the final balloon payment, and missed all required quarterly payments to the U.S. Trustee. (Doc. 5-1 at 110–111). Moreover, the default continued at least until the time of the Hearing in August 2024, more than a year after the first missed payment to FTAS. (Doc. 5 at 8). The Bankruptcy Court did not commit clear error by concluding that both the number of missed payments and the length of the default supported a finding of cause. *See In re Baroni*, 36 F.4th at 967 (number of missed payments and how long the default occurred are factors relevant to showing material default).

### 2. Best Interests

Next, Robinson argues that the Bankruptcy Court did not consider potential unusual circumstances that could have shown that dismissal was not in the best interests of creditors and the estate. (Doc. 5 at 17–18). He provides two such unusual circumstances: the COVID-19 pandemic and that he was prepared to make a cure payment to FTAS on or before the date of the Hearing. (*Id.* at 18).

The decision to dismiss the case falls within the discretion of a bankruptcy court. *In re Sullivan*, 522 B.R. at 612. However, a court may not dismiss a Chapter 11 case if three conditions are met: (1) the court specifically identifies unusual circumstances establishing

that converting or dismissing the case is not in the best interests of creditors and the estate, (2) there is a reasonable likelihood that a plan will be confirmed within an appropriate timeframe, and (3) the grounds for dismissing the case include an act or omission for which there is a reasonable justification, and which will be cured within a reasonable period of time. 11 U.S.C. § 1112(b)(2).

"[T]he term 'unusual circumstance' 'contemplates conditions that are not common in chapter 11 cases.'" *In re Baroni*, 36 F.4th at 968 (quoting *In re Mahmood*, 2017 WL 1032569, at *8 (B.A.P. 9th Cir. Mar. 17, 2017) (unpublished)). Circumstances common in bankruptcy, such as "difficulty making plan payments, disputes regarding the validity and amounts of claims, and other similar issues are not 'unusual circumstances.'" *In re Baroni*, 36 F.4th at 968 (citing various cases). An unusual circumstance is something more than financial pressure or adversarial differences. *Id.* at 969. Courts have found unusual circumstances "exist where continuing the case in Chapter 11 will likely yield a higher recovery for creditors without the usual risks of failure associated with a Chapter 11 plan." *Id.* at 968–69; *see also In re Orbit Petroleum, Inc.*, 395 B.R. 145, 149 (Bankr. D.N.M. 2008) (continuing in Chapter 11 was in the best interests because the proposed plan provided for a significant capital infusion that would pay all creditors in full); *In re Costa Bonita Beach Resort Inc.*, 479 B.R. 14, 43 (Bankr. D.P.R. 2012) (unusual circumstances existed where Chapter 11 plan protected unsecured creditors more than other options).

The Ninth Circuit has held that "the ability to cure a default is not itself an unusual circumstance" because the statute separately requires unusual circumstances *and* the ability to cure. *In re Baroni*, 36 F.4th at 969; *see also* 11 U.S.C. § 1112(b) (requiring both unusual circumstances and that the grounds for dismissing the case include an act or omission of the debtor that will be cured within a reasonable period of time).

Here, Robinson first puts forth the COVID-19 pandemic as an unusual circumstance. (Doc. 5 at 18). Robinson does not point to, nor can the Court find, any place in the record where he presented this argument to the Bankruptcy Court. (*Id.*) The Court will not consider this argument because the factual record was not developed below and

- 8 -

Robinson has provided no exceptional reason for the Court to do so. *See Rose Ct., LLC v. Select Portfolio Servicing, Inc.*, 119 F.4th 679, 688–89 (9th Cir. 2024) (listing circumstances where courts exercise discretion to consider new arguments on appeal). Furthermore, the fact that Robinson was prepared to make a cure payment in August 2024 is also not an unusual circumstance. *In re Baroni*, 36 F.4th at 969. Section 1112(b) requires *both* unusual circumstances *and* the ability to cure. *Id.* The ability to cure alone is not sufficient. *Id.*

The Bankruptcy Court also investigated whether there were any other unusual circumstances that might militate against a dismissal. At the Hearing, the Bankruptcy Court asked Robinson's counsel why Robinson had not paid the U.S. Trustee any quarterly fees since confirmation. (Doc. 5-1 at 110). Robinson's counsel answered: "I mean, I could try to give you an answer. I can tell you that it's not going to be an adequate response to what's going on." (*Id.* at 110–11). In other words, Robinson provided the Bankruptcy Court with no unusual circumstances other than the ability to cure, which is not by itself an unusual circumstance. *In re Baroni*, 36 F.4th at 969.

The Court finds that the Bankruptcy Court did not commit clear error in finding that dismissal was in the best interests of creditors and the estate. *In re JTS Corp.*, 617 F.3d at 1109.

### 3. Form of Relief

Finally, Robinson argues that the Bankruptcy Court failed to inquire whether conversion or appointment of a trustee or examiner was more appropriate than dismissal. (Doc. 5 at 17).

If cause exists, "the decision whether to convert or dismiss the case falls within the sound discretion of the court." *In re Sullivan*, 522 B.R. at 612. Regardless of what the parties argue, the bankruptcy court has "an independent obligation under § 1112 to consider . . . whether dismissal or conversion would be in the best interest of all creditors." *Id.* at 612–613. When making that decision, the bankruptcy court "must consider the interests of *all* of the creditors," not merely the largest creditor or the majority of the creditors. *In*

*re Owens*, 552 F.3d at 961 (quoting *In re Superior Siding & Window, Inc.*, 14 F.3d 240, 243 (4th Cir. 1994)) (emphasis in original).

Robinson relies on *In re Sullivan* for the proposition that the Bankruptcy Court committed clear error by failing to consider whether conversion or dismissal was appropriate. (Doc. 5 at 17). However, in that case, the court focused its analysis on whether dismissal was in the best interests of *all* of the creditors, noting that some creditors did not support dismissal. *In re Sullivan*, 522 B.R. at 613 ("[I]t is notable that the United States Trustee made clear that it did not support dismissal."). Ultimately, the court concluded that there was a strong possibility that conversion was in the best interest of other creditors. *Id.* at 614 ("The evidence strongly suggests that conversion is in the best interest of all creditors other than Appellees.").

Here, no creditor has objected to the dismissal of the case—in fact, at the Hearing, the U.S. Trustee, the only other creditor, indicated that it supported FTAS's position. (Doc. 5-1 at 111–12). Although the Bankruptcy Court did not explicitly address whether dismissal was a better alternative to conversion, it inquired about the position of another creditor, the U.S. Trustee, before it decided to grant the motion. (*Id.*)

Because no creditor objected to dismissal and the Bankruptcy Court considered the best interests of all of the creditors, the Court finds that the Bankruptcy Court did not commit clear error here. *In re Sullivan*, 522 B.R. at 613–14; *see also In re Baroni*, 36 F.4th at 970 (rejecting an argument that the bankruptcy court did not adequately consider form of relief where no creditor had objected to a motion for conversion).

### B.     Evidence and Notice of Default

Robinson contends that the Bankruptcy Court committed clear error when it found that FTAS met the requirement of notice of default in the Plan. (Doc. 5 at 12–13). The Plan requires that a creditor seeking to enforce the Plan in the event of a default "provide notice to the Debtors specifying the nature of the alleged default and providing the Debtors a 30-day period to cure such default. Any such notice shall be in writing and sent to the Debtors via certified mail." (Doc. 5-1 at 23–24). Robinson claims that the Bankruptcy

Court did not have any evidence that the Notice of Default was delivered via certified mail when it granted the motion to dismiss. (Doc. 5 at 13).

In response, FTAS argues (1) the Stipulation does not require that the notice be sent via certified mail, (2) notice in the contractually prescribed manner is not required where a party has actual notice and has not suffered prejudice, and (3) that there is evidence in the record that the Notice of Default was sent via certified mail. (Doc. 6 at 9). The Court addresses each argument and finds that the Bankruptcy Court did not commit clear error when it found that the Notice of Default was sufficient.

### 1. The Stipulation

FTAS observes that the Stipulation does not require delivery via certified mail and argues that because the Stipulation controls, the certified mail requirement in the Plan no longer applies. (Doc. 6 at 9).

A Chapter 11 bankruptcy plan "must be interpreted according to the rules governing the interpretation of contracts." *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004) (citation omitted). Under Arizona law, courts "give effect to a contract as written where the terms of the contract are clear and unambiguous." *Mining Inv. Grp., LLC v. Roberts*, 177 P.3d 1207, 1211 (Ariz. Ct. App. 2008) (citation omitted). If the intent of the parties is clear "by their language and in view of all circumstances," there is no ambiguity. *In re Estate of Lamparella*, 109 P.3d 959, 963 (Ariz. Ct. App. 2005). Language is ambiguous only if "it can reasonably be construed to have more than one meaning." *Id.*

The Plan states that a stipulation "only modifies the Plan to the degree an issue is addressed. For instance, if there is no discussion of the number of days required to be considered in default, the terms of the Plan control." (Doc. 5-1 at 17). The portion of the Stipulation in question provides, "[i]n order to be in default, the Creditor must provide a thirty-day notice providing the details of the default to the Debtor directly at the [subject property address] or as notified by the Debtor." (Doc. 5-1 at 31).

The Stipulation contains no language about the method of delivery. By the clear and unambiguous language of the Plan, when the Stipulation is silent on an issue, the terms

1  of the Plan control. *See In re Estate of Lamparella*, 109 P.3d at 963 (language is
2  unambiguous if it cannot have more than one meaning).  Hence, the Plan still required
3  FTAS to send the Notice via certified mail. *See id.*

### 2. Actual Notice and Prejudice

Relying on *Wickahoney Sheep Co. v. Sewell*, 273 F.2d 767 (9th Cir. 1959), FTAS argues that notice in the prescribed manner is not required where a party has actual notice and has not suffered prejudice.  (Doc. 6 at 9).  That case involved two competing agreements with separate procedures for providing notice.  *Wickahoney Sheep Co.*, 273 F.2d at 769–70.  The Ninth Circuit, applying state law, found that whichever agreement controlled, "notice in the prescribed manner is not required where a party has actual notice and has not suffered prejudice." *Id.* at 770 (citing Idaho law).  But *Wickahoney* is inapplicable to this case because that court relied on Idaho law for this holding. *Wickahoney Sheep Co.*, 273 F.2d at 770 (citing *Quinn v. Hartford Accident & Indem. Co.*, 232 P.2d 965 (Idaho 1959)).[2]

Courts interpret Chapter 11 bankruptcy plans like contracts. *Miller*, 363 F.3d at 1004.  If the Plan is clear and unambiguous, the Court gives it effect as written. *See Mining Inv. Grp.*, 177 P.3d at 1211.  The language of the Plan can only be reasonably construed to have one meaning: "Before [enforcing the Plan], however, a Creditor *must* provide notice to the Debtors. . . . Any such notice *shall* be in writing and sent to the Debtors via certified mail."  (Doc. 5-1 at 23–24 (emphasis added)).   Therefore, according to the Plan, FTAS was obligated to provide notice via certified mail. *See id.*

### 3. Evidence of Certified Mail

FTAS, as the party moving to dismiss, bears the burden of showing that Robinson

---

[2] FTAS cites *Neves v. Great American Capital*, 291 Fed. Appx. 36 (9th Cir. 2008) (unpublished), to show that the Ninth Circuit has applied *Wickahoney* to a Chapter 11 case outside Idaho.  (Doc. 6 at 6).  In *Neves*, notice was sent to the debtor's attorney instead of the debtor as required.  291 Fed. Appx. at 38.  The Ninth Circuit stated, "[i]t is settled that 'notice in the prescribed manner is not required where a party has actual notice and has not suffered prejudice.' " *Id.* (quoting *Wickahoney Sheep Co.*, 273 F.2d at 770).  But *Neves* is an unpublished decision that is not precedent except in certain circumstances and not applicable here. *See* 9th Cir. R. 36-3 ("Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.").

was in default. *In re Baroni*, 36 F.4th at 966. The record below is scant as to evidence that the Notice of Default was sent via certified mail. However, FTAS claims that there is enough in the record to prove that the Notice was indeed properly sent. (Doc. 6 at 9). In support of this assertion, it points only to the Notice itself. (*Id.*) Indeed, the Notice contains the text "VIA CERTIFIED MAIL." (Doc. 5-1 at 55). Robinson argues that FTAS could have shown this through a mailing receipt, testimony, or an affidavit from the custodian of record—but did not. (Doc. 9 at 6). This, he claims, shows that the Bankruptcy Court committed clear error in finding notice proper. (*Id.*)

Robinson did not raise this issue in his response/objection to the motion to dismiss. (*Id.* at 68–69). At the hearing, Robinson's attorney raised it to the Bankruptcy Court for the first and only time as follows:

> [Robinson's Counsel]: . . . . The only question would really be whether they're in default.
>
> The plan in paragraph 8 has a provision regarding certified mails required for notice. There's a stipulation. The stipulation mentions [a] thirty-day notice, doesn't say anything about certified mail, but it also doesn't say that the terms of the plan apply to this particular stipulation, or in other words, that it could still be restricted by the plan. But beyond that, those are the main—that would be the main defense the Debtor would have as to the motion as to whether he's in default.

(Doc. 5-1 at 110). Significantly, Robinson never informed the Bankruptcy Court that he did not receive notice or that notice was not sent via certified mail.[3] (*Id.*)

A district court determines that a bankruptcy court was in clear error only when its finding of fact is "illogical, implausible, and without support in inferences that may be drawn from the record." *Doe*, 28 F.4th at 106. The Bankruptcy Court's finding that notice of default was sufficient is not so. It could have logically and plausibly found that the text of the Notice of Default was sufficient for FTAS to meet its burden. *See Doe*, 28 F.4th at 106. The Court is not convinced that the Bankruptcy Court needed to have asked for more

---

[3] The Court observes that Robinson has not argued in his briefings that the Notice of Default was not sent via certified mail, only that the Bankruptcy Court had no evidence that it was sent via certified mail. (Docs. 5 at 12–13; 9 at 6).

- 13 -

1  evidence about the method of delivery, especially since Robinson never mentioned that the
2  Notice was not sent via certified mail.  *See In re JTS Corp.*, 617 F.3d at 1109 (a court must
3  accept a bankruptcy court's finding of fact unless it is firmly convinced there is a mistake).
4  The Bankruptcy Court did not commit clear error here.

### C. Notice of Hearing

For the first time on appeal, Robinson argues that the Bankruptcy Court erred when it granted the motion to dismiss because FTAS's Notice of Hearing failed to comply with Local Rule of Bankruptcy 9013-1(k).  (Doc. 5 at 13–15).  This rule provides that "the moving party must obtain and provide . . . the following information: . . . [t]hat the Court may vacate the hearing and grant the relief requested if no timely objection is served and filed."  LRBankr 9013-1(k).  Robinson notes that FTAS's Notice of Hearing filed on July 29, 2024, did not include that language.  (Docs. 5 at 15; 5-1 at 59–60).  Therefore, he claims the Notice of Hearing was deficient and the Bankruptcy Court committed clear error by granting the motion to dismiss.  (Doc. 5 at 13–15).  The Court finds Robinson waived this argument because it was not argued below.

Generally, courts "will not consider arguments raised for the first time on appeal, although [they] have the discretion to do so." *Rose Ct., LLC*, 119 F.4th at 688 (quoting *In re Am. W. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000)); *see also In re Solimano Framing Grp. LLC*, 664 B.R. 803, 810 n.7 (B.A.P. 9th Cir. 2024) ("[A] party 'who fails to timely raise an issue in the bankruptcy court cannot raise it on appeal.' " (quoting *In re Wash. Coast I, L.L.C.*, 485 B.R. 393, 411 (B.A.P. 9th Cir. 2012))).  Courts exercise their discretion to consider these arguments "in the following three circumstances: (1) in the exceptional case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, (2) when a new issue arises while appeal is pending because of a change in the law, and, (3) when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Rose Ct., LLC*, 119 F.4th at 688–689 (internal quotation marks omitted) (citing *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1322 (9th Cir.

2012)).

Robinson does not present any exceptional circumstances that prevented him from raising the issue before the Bankruptcy Court. Nor has he identified any relevant changes in the law. Finally, the issue presented is one of fact, not one of law, as Robinson himself concedes. (*See* Doc. 9 at 9–10 (arguing that there is a lack of facts in the record to show proper notice of hearing)). The Court therefore declines to consider this new argument raised for the first time on appeal. *See Rose Ct., LLC*, 119 F.4th at 688–689.

Accordingly,

**IT IS HEREBY ORDERED** that the Order Granting the Motion to Dismiss issued by the Bankruptcy Court (Doc. 5-1 at 104–105) is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and close this matter.

Dated this 21st day of July, 2025.

Honorable Diane J. Humetewa
United States District Judge